IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 30, 2019

## STATE OF TENNESSEE v. WAYNE LEONARD YELTON

**Appeal from the Criminal Court for Sullivan County**
**No. S65,419  James F. Goodwin, Jr., Judge**

_____

## No. E2018-01436-CCA-R3-CD

_____

The Defendant, Wayne Leonard Yelton, appeals his convictions of rape of a child, three counts of aggravated sexual battery, incest, and attempted incest and his effective sentence of forty-one years.  On appeal, the Defendant asserts that the evidence is insufficient to support his convictions and that his sentence is excessive.  Upon reviewing the record and the applicable law, we affirm the trial court's judgments.  However, we remand to the trial court for entry of corrected judgments to reflect that the trial court imposed an eleven-year sentence for each aggravated sexual battery conviction in counts three and four and a three-year sentence for the attempted incest conviction in count five.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Andrew J. Gibbons, District Public Defender, and Lesley A. Tiller, Assistant Public Defender (on appeal), and Kyle Vaughan, Kingsport, Tennessee (at trial), for the appellant, Wayne Leonard Yelton.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and William Harper and Emily Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant was indicted on two counts each of rape of a child, aggravated sexual battery, and incest as a result of sexually abusing his eight-year-old granddaughter on two separate occasions in 2015. The victim, who was ten years old at the time of the trial, testified that when she was eight years old, she visited her grandparents often and spent the night at their home. On July 29, 2015, she and the Defendant were in his bedroom watching television when the Defendant closed the bedroom door and instructed the victim to remove her clothes. The victim removed all of her clothing, including her underwear. The victim testified that the Defendant touched her breasts and buttocks. She stated that the Defendant touched her "biscuit" and put his finger inside her and that "it kind of tickled."

The victim said the Defendant was acting "different" and "had a different look on his face." He warned the victim that if she told anyone, "something bad" would happen to her mother. The Defendant's wife, who was also the victim's grandmother, walked into the room and caught the Defendant. She instructed the victim to put on her clothes and go into the living room. The Defendant's wife closed the bedroom door, and the victim could hear her and the Defendant talking but did not understand them.

The victim testified to another instance of sexual abuse by the Defendant that occurred "[m]aybe a month or so" before July 2015 before she was out of school for the summer. She stated that while she was in the Defendant's bedroom, he touched her on the "same spots." She did not recall whether the Defendant put his hand inside her but said he "moved his finger around."

On cross-examination, the victim agreed that the first instance occurred before school let out for the summer, and she believed it may have occurred in May or June of 2015. She agreed that when she said the Defendant moved his finger around, she meant that his finger was inside of her. She first reported the abuse to her mother on July 29th while at the Defendant's home.

After the Defendant's wife found the victim and the Defendant in the bedroom on July 29th, the Defendant grabbed a gun and threatened to kill himself. Officer Roger Antone of the Sullivan County Sheriff's Office went to the Defendant's apartment in response to a call regarding an attempted suicide. Another officer secured the Defendant's gun prior to Officer Antone's arrival. Officer Antone testified that when he asked the Defendant why he wanted to commit suicide, the Defendant replied that "he did a bad thing, [that] he will not be forgiven[,] and that he should have shot [himself] when he had the chance." Officer Antone attempted to speak to the Defendant further, but "communication stopped at that point." Detective Tracy Haraz with the Sullivan County Sheriff's Office spoke to the Defendant's wife, who refused to cooperate or give a statement.

- 2 -

The Defendant was transported to a hospital for an evaluation. Officer Antone stated that the victim was present at the apartment and that a child abuse investigation commenced once her parents arrived. On cross-examination, Officer Antone testified that the Defendant never said he was "accused of doing a bad thing" and never stated what the "bad thing" was.

The victim's mother testified at trial and acknowledged that she had a prior misdemeanor conviction for the unauthorized use of a motor vehicle. She stated that in July 2015, the victim often spent time with the Defendant and his wife at their apartment, and the victim had a good relationship with the Defendant. The victim was often there with her brothers, but her brothers did not accompany her on July 29th.

The victim's mother testified that on July 29th, she and her husband went to the Defendant's apartment after she was notified of the Defendant's threat of suicide. Police officers were there when she arrived. She walked into the apartment where she saw the victim crying while with the Defendant's wife. The victim's mother asked the Defendant's wife what had occurred. The victim started to speak to her mother but stopped, and the Defendant's wife instructed the victim's mother to take the victim into the bedroom. Once they were in the bedroom, the victim told her mother information that led her mother to speak to the police. The victim's mother told the Defendant's wife what the victim had stated, and the Defendant's wife became "upset." Prior to July 29th, the victim's mother was unaware of any abuse against the victim by the Defendant. On cross-examination, the victim's mother acknowledged "issues" between her husband and the Defendant and stated that the source of the "issues" was financial.

Ms. Karen Fleenor, a licensed clinical social worker at Wellmont Rescue Pavillion in Bristol, Virginia, was assigned to the Defendant's case on July 31st following his threat of suicide. The Defendant admitted to Ms. Fleenor that he had touched the victim and fondled her breasts. He stated that he and the victim were lying on a bed and watching television when the victim disrobed and the contact occurred. Ms. Fleenor reported the Defendant's statements to social services by calling the child abuse hotline. She stated that she had a mandatory duty to report child abuse and that she advised the Defendant that she would be reporting it. On cross-examination, Ms. Fleenor testified that she did not recall the Defendant telling her that he had been "accused" of fondling the victim's breasts. She stated that the Defendant reported that the sexual contact had occurred and that he was distressed about it.

The Defendant's wife testified for the defense and stated that she was the victim's grandmother and had been married to the Defendant for forty-six years. She stated that on the night of July 29th, she was in the living room watching television and would have been able to hear anything that occurred in the bedroom. She said she walked into the

bedroom where she saw the Defendant standing by a dresser and a chair and the victim lying on the bed and watching television.  The Defendant's wife said the victim was laughing and had her clothes "draped over her."  The Defendant's wife instructed the victim to go into the bathroom and put on her clothes, and the victim complied.  The Defendant's wife maintained that she did not see or hear anything supporting the allegations against the Defendant.

The Defendant's wife testified that she had caught the victim being untruthful on occasion.  The Defendant's wife recalled that the Defendant had supported the victim's parents financially, which resulted in arguments and tension between them.

On cross-examination, the Defendant's wife testified that she did not "necessarily" tell Detective Haraz on July 29th that she wanted to sit down as a family to try to resolve the matter.  She denied directing the victim's mother to the bedroom to speak to the victim.  The Defendant's wife acknowledged telling officers that when she tried to open the bedroom door to see if the victim wanted ice cream, the door was locked.  She maintained at trial that the door was always locked and said she told this to the officers.  She denied telling the officers that when she unlocked the door and entered the bedroom, she saw the victim naked and lying on her back and the Defendant kissing the victim's cheek.  The Defendant's wife maintained that the victim had her clothes lying across her "like a blanket" and that the Defendant kissed the victim's cheek and told her to put on her clothes.  The Defendant's wife stated that she told one of her daughters to sit with the victim while the Defendant's wife spoke to the Defendant and called the victim's parents.  Her daughter walked into the bedroom and stated that the Defendant had a gun pointed at his head.  Her daughter called a neighbor, who was an off-duty officer, and the officer calmed the Defendant, secured the gun, and called the police.

On redirect examination, the Defendant's wife testified that when she opened the bedroom door, the Defendant was standing away from the bed, and he walked over to the victim, kissed her on the cheek, and told her that everything was okay and to go with his wife.

The Defendant testified that on July 29th, he took Oxycodone because he had slipped and twisted his ankle earlier in the day.  He stated that while he was in the bedroom, the victim came in and began watching television.  He denied closing the bedroom door and stated that he was "pretty sure" that the victim did so because he was "incapacitated slightly."  He denied inappropriately touching the victim but admitted that he did "slip up and kiss her on the left cheek."

On cross-examination, the Defendant testified that he was "foggy" and "half [a]sleep" while in his bedroom.  He stated that the victim entered the bedroom and

- 4 -

watched television while he sat in a chair with his eyes closed. He said that upon hearing a noise, he opened his eyes to see the victim shutting the door. He stated that he heard another noise, opened his eyes, and saw that the victim was naked. He testified that as his wife was entering the room, he walked over to the bed and kissed the victim's cheek. He stated that as the victim and his wife were talking in another room, he retrieved his gun, intending to shoot himself.

The Defendant testified that he told the officer that he was "accused" of "a bad thing" and maintained that the "bad thing" to which he was referring was his threat to commit suicide. He stated that he also told Ms. Fleenor that he was "accused" of fondling the victim and that he provided details based upon the information that he learned during the investigation.

In rebuttal, the State recalled Officer Antone, who testified that on July 29th, the Defendant's wife told him that at around 9:30 p.m., the Defendant and the victim went into the master bedroom to watch television. At approximately 10:00 p.m., she went to the bedroom to see if the victim wanted ice cream and discovered that the door was locked. The Defendant's wife stated that after gaining entry, she saw the victim lying naked on the bed with the Defendant lying next to her and mentioned that the Defendant kissed the victim's cheek. When she asked the Defendant what he was doing, the Defendant looked at her "with a blank stare," and his wife called the victim to her. The Defendant then grabbed a rifle and threatened suicide, and his wife ran across the hall to obtain help from an off-duty officer.

The State also recalled Detective Haraz, who testified that although the Defendant's wife refused to provide a written statement, she told him that she went to the bedroom where the Defendant and the victim were watching television to ask if the victim wanted ice cream. The Defendant's wife stated that the bedroom door was locked, which was unusual, and that the Defendant locked the door only when he was changing his clothes or using the bathroom. Once the Defendant's wife gained entry, she saw the victim was naked and lying on the bed. The Defendant's wife did not state that the victim's clothes were draped over her. She told the detective that she did not understand why the police were called because they could resolve the matter as a family.

The State elected to rely upon the two instances of contact with the victim's vagina for the two counts of child rape and the two instances of contact with the victim's breasts for the two counts of aggravated sexual battery. With regard to the first episode of sexual abuse, the jury convicted the Defendant of one count of aggravated sexual battery as a lesser included offense of rape of a child, one count of aggravated sexual battery as charged, and one count of attempted incest as a lesser included offense of incest. With regarding to the second episode of sexual abuse, the jury convicted the

Defendant of rape of a child, aggravated sexual battery, and incest as charged in the indictment.

Neither the State nor the Defendant presented any evidence at the sentencing hearing. The State relied upon its previously filed notice regarding the enhancement factors that it sought to be applied, the presentence report, and the sex offender risk assessment. Defense counsel stated that he did not object to any information in the presentence report or the assessment, and he did not argue for the application of any mitigating factors.

Both the presentence report and the assessment included the victim's statements during her interview at the Child Advocacy Center. The victim reported that the Defendant took her clothes off, pushed her onto the bed, and got on top of her. She stated that the Defendant touched her vagina and breasts, inserted his finger inside her vagina and moved it around, and put his mouth on her breasts. She also stated that the sexual abuse occurred on two occasions and that the Defendant had a "weird look" on his face when abusing her. She said that approximately two months prior, the Defendant pulled down his pants and told the victim to look at his penis, and the victim described the Defendant's penis during the interview. The Defendant also kissed the victim on the lips. According to the assessment, the victim stated during the interview that the Defendant told her on both occasions of sexual abuse that if she told anyone, "bad things would happen to her."

The Defendant declined to provide a written statement for purposes of the presentence report and continued to maintain his innocence. According to the presentence report, the Defendant was sixty-eight years old and did not have a prior criminal record. He had an associate's degree in business, was retired after being employed with United Telephone for approximately thirty-nine years, and had served in the United States Navy.

The trial court applied the following enhancement factors to the Defendant's convictions: "(7) [t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement" and "(14) [t]he defendant abused a position of public or private trust." T.C.A. § 40-35-114(7), (14). The trial court stated that while no mitigating factors were offered by the defense, it considered the Defendant's lack of a criminal record and his military service as mitigating factors. *See* T.C.A. § 40-35-113(13) (identifying as a mitigating factor "[a]ny other factor consistent with the purposes of this chapter").

The trial court sentenced the Defendant as a Range II offender for the rape of a child conviction and as a Range I offender for the remaining convictions. *See* T.C.A. §

- 6 -

39-13-522(b)(2)(A) (requiring that a defendant convicted of rape of a child be punished, at a minimum, as a Range II offender). The trial court imposed sentences of thirty years for rape of a child, eleven years for each aggravated sexual battery conviction, three years for attempted incest, and five years for incest. The trial court merged the convictions for rape of a child and aggravated sexual battery from the July 2015 episode, as well as the two aggravated sexual battery convictions from the initial episode. The trial court ordered that the Defendant serve his thirty-year sentence for rape of a child and his eleven-year sentence for aggravated sexual battery consecutively to each other and concurrently with his remaining convictions, for an effective sentence of forty-one years. In imposing partial consecutive sentences, the trial court found that the Defendant "has been convicted of two or more statutory offenses involving sex[ual] abuse of a minor with consideration of the aggravated circumstances arising from the relationship between the [D]efendant and the victim."

The Defendant filed a motion for new trial, which the trial court denied. The Defendant appeals, arguing that the evidence is insufficient to support his convictions and that his sentence is excessive.

## ANALYSIS

### I. Sufficiency

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn.

2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

Rape of a child is "the unlawful sexual penetration of a victim by a defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). As it relates to this case, a defendant who engages in sexual penetration with a victim, knowing the victim to be the defendant's grandchild commits the offense of incest. T.C.A. § 39-15-302(a). A person attempts to commit a criminal offense who, while acting with the culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(1)-(3).

Aggravated sexual battery, as it relates to the Defendant's convictions, is "unlawful sexual contact with a victim by the defendant" when the victim is less than thirteen years old. T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as "the intentional touching of the victim's ... intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's ... intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). The breast is considered an "intimate part." T.C.A. § 39-13-501(2). Whether the contact is for the purpose of sexual arousal or gratification is a question of fact for the jury to determine. *See State v. Creed Gettys*

*Welch*, No. M2016-01335-CCA-R3-CD, 2019 WL 495117, at *5 (Tenn. Crim. App. Feb. 8, 2019), *no perm. app. filed* (citing cases).

The evidence, when viewed in a light most favorable to the State, established that the Defendant sexually abused his eight-year-old granddaughter on two separate occasions while in his bedroom. On both occasions, he had the victim disrobe and touched her breasts, buttocks, and vagina. On the second occasion, he digitally penetrated the victim's vagina. He told the victim that "something bad" would happen to her mother if she told anyone. Following the second instance of abuse in July 2015, the Defendant's wife walked into the bedroom and saw the victim naked, and the Defendant threatened to commit suicide. The Defendant admitted to Officer Antone that he did a "bad thing," and he admitted to Ms. Fleenor that he sexually abused the victim.

In challenging his convictions for aggravated sexual battery, the Defendant maintains that the evidence fails to establish that the touching was for the purpose of sexual arousal or gratification. The aggravated sexual battery statute "does not require that the appellant become sexually aroused or gratified by the sexual contact. The statute merely requires touching that can be 'reasonably construed as being for the purpose of sexual arousal or gratification.'" *State v. Mahlon Johnson*, No. W2011-01786-CCA-R3-CD, 2013 WL 501779, at *12 (Tenn. Crim. App. Feb. 7, 2013) (quoting *State v. Roy Chisenhall*, No. M2003-00956-CCA-R3-CD, 2004 WL 1217118, at *3 (Tenn. Crim. App. June 3, 2004)). The jury was well within its authority in concluding that the Defendant's touching of the victim's naked breasts and vagina were for the purpose of sexual arousal or gratification.

The Defendant also challenges the credibility of the testimony of the victim and her mother and the consistency of the victim's statements. However, these challenges relate to the credibility of witnesses, the weight and value to be given the evidence, and factual issues, all of which are resolved by the jury. *Bland*, 958 S.W.2d at 659. Although the Defendant denied the allegations at trial, it was within the province of the jury to accredit the victim's testimony over the Defendant's testimony. We conclude that the evidence is sufficient to support the convictions.

## II. Sentencing

The Defendant contends that the trial court erred in its application of enhancement and mitigating factors and in imposing partial consecutive sentences. The State asserts that the trial court properly exercised its discretion in sentencing the Defendant. We agree with the State.

- 9 -

## A. Enhancement and Mitigation

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Even if the trial court "recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The trial court is "to be guided by-but not bound by-any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Bise*, 380 S.W.3d at 706. Further, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id*. The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the sentence, the trial court must consider: (1) any evidence received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment contained in the presentence report. T.C.A. § 40-35-210(b) (Supp. 2017). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(4), (5).

Pursuant to Tennessee Code Annotated section 39-13-522(b)(2)(A), the Defendant was required to be sentenced as a Range II offender for his conviction of rape of a child, a Class A felony, and, thus, was subject to a sentence of twenty-five to forty years. *See*

T.C.A. §§ 39-13-522(b)(1); 40-35-112(b)(1). As a Range I standard offender for the remaining convictions, the Defendant was subject to a sentence of eight to twelve years for aggravated sexual battery, a Class B felony; three to six years for incest, a Class C felony; and two to four years for attempted incest, a Class D felony. *See* T.C.A. §§ 39-12-107(a); 39-15-302(b); 39-13-504(b); 40-35-112(a). The trial court imposed a mid-range sentence for each conviction.

The Defendant asserts that the trial court erred in failing to consider his work history under the "catch-all" mitigating factor in Tennessee Code Annotated section 40-35-113(13). This court has observed both that a defendant's work ethic and family contributions may mitigate a sentence and that a stable work history is not a mitigator because it is "expected of everyone." *State v. Kelly*, 34 S.W.3d 471, 482 (Tenn. Crim. App. 2000) (citing *State v. McKnight*, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994) *overruled on other grounds by State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013); *State v. Keel*, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994)). This court has reconciled these two premises and concluded that a trial court may consider a defendant's work history in mitigation if "the defendant's 'performance has surpassed that which is expected of him.'" *Id.* at 482-83 (quoting *State v. Randal A. Thies*, No. 02C01-9708-CC-00299, 1998 WL 391813, at *7 (Tenn. Crim. App. Apr. 24, 1998)); *see State v. Timothy A. Crowell*, No. M2016-01980-CCA-R3-CD, 2018 WL 3954181, at *15 (Tenn. Crim. App. Aug. 16, 2018), *perm. app. denied* (Tenn. Dec. 6, 2018). Although a positive work history may be considered, it is not a statutory mitigating factor under section 30-35-113, and "'it is left to the sound discretion of the trial court whether to apply the so-called "catch-all" provision of section 40-35-113(13).'" *Timothy A. Crowell*, 2018 WL 3954181, at *15 (quoting *State v. Glenn Lemual Stepp*, No. E2013-01291-CCA-R3-CD, 2014 WL 1018215, at *14 (Tenn. Crim. App. Mar. 17, 2014)).

The Defendant did not argue at the sentencing hearing for the application of any mitigating factors and did not offer any proof in support of any mitigating factors. Nevertheless, the trial court reviewed the presentence report and considered the Defendant's lack of a criminal history and his military history under the "catch-all" mitigating factor. We conclude that the trial court did not abuse its discretion in declining to also consider the Defendant's work history.

The Defendant next asserts that the trial court erred in applying as an enhancement factor that "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement." T.C.A. § 40-35-114(7). In determining whether to apply this enhancement factor to sexual offenses, the trial court must examine the defendant's "*motive* for committing the offense." *State v. Arnett*, 49 S.W.3d 250, 261 (Tenn. 2001) (citing *State v. Kissinger*, 922 S.W.2d 482, 490 (Tenn. 1996)). "[P]roper application of factor (7) requires the State to provide … objective evidence of the

defendant's motivation to seek pleasure or excitement through sexual assault." *Id.* at 262. Our supreme court has explained that such evidence may include, but is not limited to, "sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the defendant's enjoyment" of the offense. *Id.* (citations omitted).

The evidence presented at trial and in the presentence report established that the Defendant kissed the victim, fondled her breasts and buttocks, and inserted his finger into her vagina. The victim reported that during the assaults, the Defendant had an unusual look on his face. We conclude that the Defendant's overt sexual displays and behavior during the sexual assaults demonstrated that he committed the offenses to gratify his desire for pleasure and excitement. Thus, the trial court properly applied enhancement factor (7) to the Defendant's convictions for rape of a child, incest, and attempted incest.

The State correctly concedes that the trial court erred in applying enhancement factor (7) to the Defendant's aggravated sexual battery convictions because sexual arousal or gratification is an element of aggravated sexual battery. *See Kissinger*, 922 S.W.2d at 489-90. The mere misapplication of an enhancement factor, however, does not invalidate the sentences unless the sentences departed wholly from the Sentencing Act. *Bise*, 380 S.W.3d at 706 (upholding sentences when trial court incorrectly applied the single enhancement factor because other reasons consistent with the purposes of sentencing supported the sentences). The Defendant does not challenge the trial court's application of enhancement factor (14), and the record reflects that the trial court imposed mid-range sentences upon consideration of the purposes and principles of sentencing. The trial court did not abuse its discretion.

## B. Partial Consecutive Sentences

The Defendant challenges the trial court's imposition of partial consecutive sentences. The decision to impose consecutive sentences rests within the sound discretion of the trial court. *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010). The standard of review for consecutive sentencing is abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id*. at 862. Consecutive sentencing is "guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing T.C.A. §§ 40-35-102(1), -103(2)).

To impose consecutive sentencing, the trial court must find by a preponderance of the evidence at least one of seven factors listed in Tennessee Code Annotated section 40-35-115(b), which includes:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5). All of the aggravated circumstances listed in (b)(5) need not be present to justify consecutive sentencing, and "consecutive sentencing may still be appropriate under subsection (5) 'even when one factor militates against [it] if the other aggravating circumstances have been established and carry sufficient weight.'" *State v. James Allen Perry*, No. E2015-01227-CCA-R3-CD, 2016 WL 2901817, at *4 (Tenn. Crim. App. May 13, 2006) (quoting *State v. Doane*, 393 S.W.3d 721, 739 (Tenn. Crim. App. 2011)).

The trial court imposed partial consecutive sentences based upon subsection (b)(5) "with consideration of the aggravated circumstances arising from the relationship between the [D]efendant and the victim." The record reflects that the Defendant and the eight-year-old victim shared a close relationship as grandfather and granddaughter, and the victim often visited the Defendant and spent the night at his home. The Defendant exploited his close relationship with the victim to sexually abuse her on multiple occasions by touching her breasts, buttocks, and vagina and penetrating her with his fingers. The Defendant secured the victim's silence by threatening harm to her mother if the victim reported his action, and it was only have the Defendant's wife walked in on them that the Defendant ceased the abuse. *See State v. Ricky Allen Hickman*, No. M2013-02390-CCA-R3-CD, 2014 WL 4557626, at *9 (Tenn. Crim. App. Sept. 16, 2014) (upholding the trial court's imposition of partial consecutive sentencing where the Defendant committed multiple acts of sexual abuse that arose from his relationship as the victim's grandfather and caretaker and then made threatening statements to the victim to prevent her from reporting the abuse). Given the deference that this court must afford to a trial court's decision regarding consecutive sentencing, we conclude that the trial court did not abuse its discretion in imposing partial consecutive sentences.

## CONCLUSION

Upon reviewing the record and the applicable law, we affirm the judgments of the trial court. We note that the judgments for the aggravated sexual battery convictions in

counts three and four do not reflect aggravated sexual battery as the conviction offense or the eleven-year sentence imposed by the trial court for each conviction. We further note that the judgment for the attempted incest conviction incorrectly reflects a five-year sentence rather than the three-year sentence imposed by the trial court. Thus, we remand for correction of these judgments.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE